# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **JAMES HARRIS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case no. 4:17-cv-00842 PLC** |
| | ) | |
| **RICHARD ADAMS,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM AND ORDER

James Harris ("Petitioner"), a Missouri state prisoner, pursues this habeas corpus proceeding under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  In addition to seeking habeas relief from a state court conviction and sentence after a jury trial [ECF No. 1], Petitioner moves for: (1) a "stay and abeyance" of this habeas proceeding ("motion for stay") [ECF No. 29]; (2) leave to supplement his petition pursuant to Federal Rule of Civil Procedure 15 ("motion to supplement") [ECF No. 40]; (3) appointment of counsel under 28 U.S.C. Section 1915(e) ("motion for appointed attorney") [ECF No. 41]; and (4) in forma pauperis status under 28 U.S.C. § 1915 [ECF No. 42].  Respondent Richard Adams filed opposition to Petitioner's petition and motion for stay. [ECF Nos. 14, 35] Petitioner filed a reply supporting his petition. [ECF No. 22] For the following reasons, Petitioner's motions and petition are denied.[2]

## I.    Background

---

[1] The Court substitutes as the Respondent Richard Adams, the Warden of the Missouri Eastern Correctional Center ("MECC") where Petitioner is presently incarcerated, in lieu of the person who was the Warden of the Missouri correctional institution having custody of Petitioner when he filed this habeas proceeding.  See Federal Rule of Civil Procedure 25(d); Rule 2(a) of the Rules Governing Section 2254 cases in the United States District Court.

[2]  The parties consented to the exercise of authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The State charged Petitioner with one count of first-degree statutory sodomy of A.R., a female younger than twelve years old (Count I); two counts of attempted first-degree statutory sodomy of A.B.W. (Counts II and III); and, as an alternative to Count III, one count of enticement of a child (Count IV), alleging the offenses occurred between July 1, 2006, and February 2, 2009, in the City of St. Louis.[3] [ECF No. 17-5] The evidence at trial was that, over the course of the alleged time period, the victims lived at residences on Folsom, McRee, and Shenandoah Avenues[4] with their mother J.L.W., their siblings, and Petitioner. [ECF No. 17-1, 17-2] At various times, Brittany Jones, who has two children with Petitioner, and Cierra Hogan, Petitioner's girlfriend, also resided in the home and acted as the victims' babysitters. [Id.]

A.R., who was ten years old at the time of trial, testified that when they were living together, Petitioner wanted A.R. to touch his penis with her mouth on more than one occasion, and it would occur in either the living room or behind the closed door of her mother's room. [Id.] A.R. stated she would be sitting while Petitioner was standing, with his pants off or lowered, and he would tell her what to do, like "suck my [penis]," and A.R. would do it. [Id.]  Although Petitioner told A.R. not to tell anyone, A.R. eventually told people about the abuse, including J.L.W.  [Id.]

Prior to the start of trial, A.R. received text messages from Jones that discussed A.R. going to court. A.R. testified Jones instructed A.R. in the messages to testify that Hogan told A.R. to make the allegations of abuse. A.R. testified Petitioner's conduct "happened" and Hogan did not tell her to accuse Petitioner.  During cross-examination, Petitioner's attorney asked

---

[3] The State also charged J.L.W, the mother of A.R. and A.B.W., with three offenses in the same indictment: two counts of first-degree endangering the welfare of a child (Counts V and VII) and one count of victim tampering with respect to A.R. (Count VI).

[4] The evidence suggests that the victims lived at the Folsom Avenue residence from approximately July 2006 until late 2008, possibly moving to the McRee Avenue residence sometime in November 2008. They lived at the McRee Avenue residence only a short time as the evidence shows they were living in the Shenandoah Avenue residence in January 2009 and possibly as early as December 2008.

whether A.R. had sent Jones certain text messages and A.R. acknowledged she had. A.R. admitted sending a message to Jones stating Hogan told A.R. to accuse Petitioner of abuse because Hogan was angry with Petitioner and wanted to get him into trouble. [Id.]

A.B.W., who was seven years old at the time of trial, testified that, on more than one occasion, while the three of them were behind the closed door of her mother's room she saw A.R. sucking Petitioner's "privates" with her mouth and hands. [Id.]  She described A.R. as performing while clothed and sitting on her knees, after Petitioner, who was standing and clothed, took "his private part out of his pants and his drawers." [Id.]  A.B.W. testified she refused Petitioner's repeated request that she do the same despite his threats to punish her, to not give her Christmas presents, and to "rape and kill" her if she did not comply.  [Id.]

In May 2008, A.R. disclosed the abuse to Adora Keen, a friend of Hogan. [Id.] Keen first reported the allegations to Hogan, and then Keen and Hogan, in A.R.'s presence, reported the abuse to J.L.W. [Id.] Keen testified A.R. was crying during the conversation, and Keen described J.L.W. as reacting as though she did not believe A.R., which upset Keen. [Id.]

In January 2009, Hogan told Telisha Wagner, A.R.'s aunt, about the abuse. [Id.] Wagner called A.R. and asked if Petitioner "was messing around with her," and A.R. responded, "Yes." [Id.] Next, Wagner asked A.R. if Petitioner was "making her suck his dick," and A.R. said, "Yes," while sounding "real scared." [Id.] After the call, Wagner reported the information to a child abuse hotline. [Id.]

The Missouri Children's Division and the St. Louis Metropolitan Police Department (SLMPD) both investigated the January 19, 2009 hotline call. [Id.] Joshua Fantroy, an investigator for the Children's Division, immediately responded to the hotline report. [Id.] A.R. told Fantroy "she had to suck [Petitioner]'s private" and it had happened more than three times in

that residence within approximately the three months before Christmas and that A.B.W. "had turned down [Petitioner] for doing the same act." [Id.] Fantroy stated that, at one point, A.R. was "hysterical" and begged him not to "do anything" because she did not want to get into trouble. [Id.] Fantroy testified A.B.W. reported seeing A.R. "sucking the front" of Petitioner and Petitioner "had asked her to, but . . . she said no." [Id.]   A.B.W. also said Petitioner "had threatened to take away Christmas from her"; and that this had happened at their current residence on Shenandoah Avenue as well as the residence on Folsom Avenue. [Id.] After speaking with the victims, Fantroy advised J.L.W. that Petitioner could not have any contact with the victims until Fantroy investigated the allegations. [Id.] Fantroy gave J.L.W. the choice of requiring Petitioner to leave the home or the children. J.L.W. chose to have Petitioner leave the home. [Id.] Fantroy called Petitioner and explained the situation and advised Petitioner that he was prohibited from having contact with the children. [Id.]

Heather Taylor, a sergeant with the SLMPD, also investigated the January 2009 hotline call. [Id.]   During her investigation, Sergeant Taylor learned from Keen that Petitioner abused A.R. in 2008 at the Folsom Avenue residence. [Id.]   Sergeant Taylor, reviewed Ameren UE utility records, and confirmed that J.L.W. and her children lived on Folsom Avenue from July 2006 until approximately November 2008. [Id.]

Beverly Tucker, a forensic interview specialist for the Children's Advocacy Center of Greater St. Louis interviewed A.R. and A.B.W. in February 2009. [Id.] A.R., who was nine years old at the time, denied any sexual abuse had occurred. [Id.] Tucker testified that during the interview with then five-year-old A.B.W., A.B.W. stated she witnessed A.R.'s mouth on Petitioner's "front private[.]" [Id.] A.B.W. stated Petitioner asked her to participate and described what to do but she refused.   A.B.W. also demonstrated for Tucker what she had

observed by getting on her knees and making hand movements. [Id.] Tucker videotaped her interview with A.B.W. [Id.]

On February 2, 2009, Fantroy received a hotline call advising that Petitioner and the children were at the residence on Shenandoah Avenue. [Id.] Fantroy responded to the residence with Detective Mickey Owens and another police officer. When they arrived at the residence, Detective Owens stated to Petitioner that they were there to check on A.R. and A.B.W., and asked Petitioner if the children were home. [Id.] Petitioner said the children were not at the residence. Based on information Petitioner provided, Detective Owens tried several telephone calls to locate the children. [Id.]  When the children were not located, Fantroy and the officers searched the home, and found four children including A.R. and A.B.W. and Jones in the basement. Detective Owens testified A.R. told him that Petitioner had been living at the residence for "a long time[.]" Detective Owens and Fantroy took the children into emergency protective custody.

Petitioner presented the testimony of Jones and Hogan at trial. Jones testified she dated Petitioner at the same time Petitioner was dating J.L.W. and that she babysat A.R. and A.B.W. at the Folsom, McRee, and Shenandoah Avenue residences. Jones testified she did not live at the Folsom Avenue residence but lived at the McRee and Shenandoah residences. Jones stated the children were never alone with Petitioner when she babysat. Both sides questioned Jones about specific text messages sent from and received on her cell phone between October 2, 2010, and October 10, 2010. Some of the messages Jones received from A.R. state that Hogan told A.R. to make allegations against Petitioner because Hogan was angry with Petitioner and she "wanted [Petitioner] all to herself[.]"

Hogan testified that she had a sexual relationship with Petitioner between 2007 and August 2008. Hogan stated she babysat the victims in April and May 2008, when she lived at the Folsom Avenue residence with J.L.W., her children, and Petitioner. Hogan testified Petitioner was never alone with the children when she babysat the children and that A.R. stated that she "hated" Petitioner "because . . . he's taking . . . mama away from" her.  Hogan testified that in May 2008, Keen approached Hogan and told her to talk to A.R. When Hogan asked A.R. what was going on, A.R. started crying and "repeating she was going to be in trouble." Hogan hugged A.R. and asked her again what was going on and A.R. responded Petitioner "made me suck his dick." Specifically, A.R. told Hogan it happened when A.R. "got in trouble at school and [Petitioner] took her away from the house" in the car; A.R. said Petitioner "made me suck his dick in the car."  Hogan encouraged A.R. to tell J.L.W. about the incident. Hogan testified that, after hearing A.R., J.L.W. was not supportive of A.R. and seemed to accuse A.R. of being a liar, while telling A.R. to tell J.L.W. if "anything like that happens again." Hogan was upset with how J.L.W. handled the situation and moved out shortly thereafter.

At the conclusion of the testimony, the trial court discussed with the parties Petitioner's effort to admit certain text messages on Jones's cell phone. The trial court sustained the State's objection to the admission of any text message that were not specifically referenced by the witnesses, finding no foundation had been laid for their admission. However, the court permitted argument about the specific messages that the witnesses discussed. [ECF No. 17-2].

The jury found Petitioner guilty of one count of first-degree statutory sodomy and two counts of attempted first-degree statutory sodomy as charged in Counts I through III.  The trial court dismissed the alternative Count IV and sentenced Petitioner to three concurrent sixteen-year terms of imprisonment. [ECF Nos. 17-4, 17-5].

Petitioner filed a direct appeal, and the Missouri Court of Appeals affirmed. Petitioner also filed a post-conviction motion pursuant to Missouri Supreme Court Rule 29.15. The motion court denied Petitioner's claims after conducting an evidentiary hearing, and the Court of Appeals affirmed the motion court's decision. Petitioner now seeks habeas relief before this Court.

## II.    Motions

Privately-retained counsel represented Petitioner and filed the Section 2254 petition and reply on Petitioner's behalf. The Court subsequently granted counsel's request for leave to withdraw, and Petitioner filed several pro se motions which remain pending, including: (1) a motion for stay of the habeas proceeding [ECF Nos. 29], (2) a motion for leave to supplement the petition [ECF No. 40]; (3) a motion for appointment of counsel [ECF No. 41]; and (4) a motion to proceed in forma pauperis [ECF No.42]. The Court addresses Petitioner's pro se motions before considering the grounds for relief presented in his habeas petition.

### A.  Motion for Stay

A petitioner must exhaust his state court remedies before a federal habeas court may grant relief on the merits of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A); Armstrong v. Iowa, 418 F.3d 924, 925 (8th Cir. 2005). When a state court remedy is available to a state prisoner, a federal habeas court must defer action until the claim is exhausted, either by dismissing the federal petition without prejudice or by using the "stay and abeyance" procedure described in Rhines v. Weber, 444 U.S. 269 (2005). See Armstrong, 418 F.3d at 926. Under stay-and-abeyance, a federal district court stays the habeas petition and holds it in abeyance while the petitioner returns to the state court to exhaust his previously unexhausted claims. Rhines, 444 U.S. at 275. If no state court remedy is available for the unexhausted claims, such that resort to a

state court is futile, then a petitioner is deemed to satisfy the exhaustion requirement of Section 2254. Armstrong, 418 F.3d at 926. However, even if the statutory requirement for exhaustion is met, a petitioner's failure to properly bring his claim in state court "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate [either] cause and prejudice for the default" or actual innocence. Id. (quoting Gray v. Netherland, 518 U.S. 152, 162 (1996)). In such cases, stay-and-abeyance is unnecessary and instead a federal court considers whether the claim is procedurally defaulted and, if so, whether the default may be excused. Id. at 927.

Petitioner has filed with this Court a motion requesting a stay and abeyance of the federal habeas proceedings so that he can raise any unexhausted claims in the state courts through a Missouri Supreme Court Rule 91 habeas corpus petition. Although Petitioner only specifically identifies Ground Eight in his federal habeas corpus petition as an unexhausted claim, Petitioner's Grounds Two, Six, Seven, Nine, and part of Ground Three are also potentially unexhausted claims because Petitioner failed to pursue an appropriate state remedy in accordance with state procedural rules.[5] Respondent argues that the Court should deny Petitioner's motion for stay because Petitioner has no non-futile state remedies remaining with respect to his unexhausted claims.

Chapter 532 of the Missouri Revised Statutes and Missouri Supreme Court Rule 91 govern Petitioner's Missouri habeas claims. State ex rel. Zinna v. Steele, 301 S.W.3d 510, 513 (Mo. 2010).  Missouri habeas review, however, "is not appropriate where a defendant could have

---

[5] Petitioner raised his Ground Two, an ineffective assistance of counsel claim, in his Rule 29.15 post-conviction motion but did not appeal the motion court's denial of this claim. Petitioner's Ground Seven and a portion of his Ground Three, both ineffective assistance of counsel claims, were not raised in his post-conviction motion. Petitioner's Grounds Six, Eight, and Nine, allegations of trial court error and State misconduct, were not raised during trial or on direct appeal.

raised claims at trial, on direct appeal, or during post-conviction relief proceedings according to the state's procedural rules but did not do so for reasons internal to the defense." State ex rel. Strong v. Griffith, 462 S.W.3d 732, 738 (Mo. 2015); State ex rel. Simmons v. White, 866 S.W. 2d 443, 446 (Mo. 1993) (Missouri's established system for the review of criminal convictions provides for direct appeal and for post-conviction review of certain constitutional protections pursuant to Rules 29.15 and 24.035, and habeas corpus is not a substitute for those proceedings). In addition, Missouri habeas proceedings are not a part of Missouri's established appellate review process and, thus, do not satisfy the exhaustion requirement of 28 U.S.C. § 2254. See Randolph v. Kemna, 276 F.3d 401, 404 (8th Cir. 2002).

"Habeas corpus may be used to challenge a final judgment after an individual's failure to pursue appellate and post-conviction remedies *only* to raise jurisdictional issues or in circumstances so rare and exceptional that a manifest injustice results." White, 866 S.W.2d at 446 (emphasis in original). Missouri recognizes three exceptions to the rule of procedural default in habeas proceedings: (1) a claim of actual innocence, (2) a jurisdictional defect, or (3) a procedural defect caused by something external to the defense and prejudice from the underlying error that worked to the petitioner's actual and substantial disadvantage. Steele, 301 S.W.3d at 516–17; Clay v. Dormire, 37 S.W.3d 214, 217-18 (Mo. 2000).

In his motion for stay, Petitioner maintains he will be able to successfully assert a state habeas petition because he meets two of these exceptions: (1) actual innocence and (2) good cause for failing to bring his claims earlier based on the ineffective assistance he received from counsel at every stage. The Court finds Petitioner has failed to demonstrate that he meets either exception. First, Petitioner has not pleaded any facts supporting his claim that he is actually innocent. Second, Petitioner's argument that he can meet the "cause and prejudice" exception

based upon ineffective assistance of counsel ultimately relies upon a showing that post-conviction counsel was ineffective for failing to raise claims of ineffective assistance of trial and appellate counsel in the post-conviction petition as articulated in <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012). Missouri, however, does not recognize the <u>Martinez</u> exception to satisfy cause and prejudice. <u>See</u> <u>Barton v. State</u>, 486 S.W.3d 332, 336-337 (Mo. 2016) (absent claims of abandonment by post-conviction counsel, claims based upon the diligence or competence of post-conviction counsel are categorically unreviewable). As such, Petitioner has failed to demonstrate that he has any non-futile remedies left to exhaust and Petitioner's Grounds Two, Three, and Six through Nine are considered exhausted for federal habeas purposes.[6] Because the petition's grounds are exhausted, Petitioner does not present a mixed petition of exhausted and unexhausted claims, and stay and abeyance of the petition is unnecessary. Accordingly, Petitioner's motion for stay and abeyance is denied.

### B. Motion to supplement

Petitioner has also filed a motion seeking leave of court to "supplement for an original 2254 giving authority [pursuant] to Rule 15."

Fed. R. Civ. P. 15(d) provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

---

[6] Again, while Petitioner's claims are deemed exhausted because he has no available state court remedy, this Court cannot reach the merits of a procedurally defaulted claim unless Petitioner demonstrates adequate cause to excuse his state court default and actual prejudice resulting from the alleged unconstitutional error, or that a fundamental miscarriage of justice would occur if the Court were not to address the claims. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>Armstrong</u>, 418 F.3d at 926-27. Whether Petitioner meets the federal habeas requirements for cause and prejudice to excuse his procedural default is a separate issue that is considered later in this Memorandum and Order.

There is a distinction between an amended pleading under Rule 15(a) and a supplemental pleading under Rule 15(d). "An amended pleading is designed to include matters occurring before the filing of the bill but either overlooked or not known at the time. A supplemental pleading, however, is designed to cover matters subsequently occurring but pertaining to the original cause." U.S. v. Vorachek, 563 F.2d 884, 886 (8th Cir. 1977) (quotation omitted). Supplementation under Rule 15(d) promotes the complete adjudication of the dispute between the parties and is "encouraged 'when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action.'" U.S. ex rel. Gadbois v. PharMerica Corp., 809 F.3d 1, 4 (1st Cir. 2015) (quoting 6A Wright et al., *Federal Practice and Procedure* § 1504, at 258–59).

Similar to requests to amend under Rule 15(a), requests to supplement the pleadings are liberally granted. Id. at 7 citing Walker v. United Parcel Serv., Inc., 240 F.3d 1268, 1278 (10th Cir. 2001). Supplementation, however, is not available as a matter of right and is subject to the court's discretion. Id. at 6. The court weighs the totality of the circumstances in determining whether to grant a motion for supplementation. Id. at 7. Factors to be considered include the futility of the supplementation, prejudice to the opposing party, unreasonable delay in the request to supplement, and whether the supplementation would "unduly delay resolution of the case." Id. (quotation omitted).

Here, Petitioner's substantive argument supporting his motion is a single sentence only requesting leave to supplement under the rule. Petitioner has not presented the Court with any information regarding the content of his proposed supplemental filing. In the absence of any allegations suggesting that Petitioner's proposed supplemental pleading would include matters

pertaining to the original habeas petition, but which occurred after the petition's filing and that supplementation of the petition would promote complete adjudication of the petition, the Court denies Petitioner's motion for leave to supplement.

### C.  Motion for appointment of counsel

Civil litigants do not have a constitutional or statutory right to appointed counsel. Nelson v. Redfield Lithograph Printing, 728 F.2d 1003, 1004 (8th Cir. 1984); Hoggard v. Purkett, 29 F.3d 469, 471 (8th Cir. 1994). However, 28 U.S.C. § 1915(e)(1) and 18 U.S.C. § 3006A(a)(2)(B) authorize a district court to appoint counsel for a petitioner seeking habeas relief under Section 2254. 28 U.S.C. § 1915 (e)(1) (stating "[t]he court may request an attorney to represent any person unable to afford counsel"); 18 U.S.C. § 3006A(a)(2)(B) (whenever the court "determines that the interests of justice so require, representation may be provided for any financially eligible person who … is seeking relief under section 2241, 2254, or 2255 of title 28."). Appointment of counsel for a habeas petitioner is within the Court's discretion. See Wilson v. Duckworth, 716 F.2d 415, 418 (7th Cir. 1983).

In assessing whether to appoint counsel, the court should "determine whether the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." Johnson v. Williams, 788 F.2d 1319, 1322 (8th Cir. 1986) (quoting. Nelson, 728 F.2d at 1005). Courts should consider several factors when making this determination, including: (1) the factual and legal complexity of the case, (2) the need to further investigate the facts and the plaintiff's ability to do so, and (3) the plaintiff's ability to present his claim.  See Id. at 1322-23.

After considering the totality of the circumstances, the Court finds that the appointment of counsel is not warranted. Petitioner's privately retained attorney drafted and filed the habeas petition and a reply to the government's response to the petition. At this stage of the proceeding,

Petitioner's claims have been fully presented to the Court and there is no need to further investigate or to present additional facts and legal arguments related to Petitioner's claims. Neither Petitioner nor this Court will substantially benefit from the appointment of counsel at this time. Therefore, Petitioner's motion for appointment of counsel will be denied, without prejudice.

### D. Motion to proceed in forma pauperis

A habeas petitioner may seek leave to proceed without paying the filing fee, otherwise known as proceeding in forma pauperis. See 28 U.S.C. § 1915. Petitioner did not file a motion for in forma pauperis when he filed his Section 2254 petition for habeas corpus and instead paid the $5 filing fee. Because Petitioner has paid the $5 filing fee in this action, his motion to proceed in forma pauperis is denied as moot. French v. Wallace, No. 4:13-CV-472 JAR, 2013 WL 1363857 * 1 (E.D. Mo. Apr. 4, 2013).[7]

### III.   Grounds for relief

### A.   Grounds presented in the federal habeas petition

Petitioner presents nine numbered grounds for relief in his federal habeas petition.  In summary, Petitioner seeks habeas relief due to: (1) trial court error (Grounds One, Six, and Nine), (2) ineffective assistance of his trial attorney (Grounds Two through Five and Seven), and (3) the State's failure to disclose evidence to Petitioner prior to trial (Ground Eight). Specifically, Petitioner alleges in his petition that he is entitled to federal habeas relief because:

> (1) the trial court violated Petitioner's rights to due process and to a fair and impartial trial under the Fifth and Fourteenth Amendments by excluding the text messages on Jones's cellular telephone, when a proper foundation had been laid for their admission (Ground One);

---

[7] Alternatively, Petitioner's motion could be denied based on his failure to demonstrate the requisite financial hardship. Petitioner did not file an affidavit attesting to his indigency and "a certified copy of the trust fund account statement (or institutional equivalent) … for the 6-month period immediately preceding the filing of the complaint" as required by 28 U.S.C. §1915 (a) (1), (a)(2).

(2) his trial attorney provided ineffective assistance of counsel by failing to lay a proper foundation for the admission of the text message records and failing to properly impeach A.R. with her prior inconsistent statements made in the text message (Ground Two);

(3) his trial attorney provided ineffective assistance of counsel by unreasonably making derogatory comments about Petitioner to the jury in opening statement, and by failing to properly couple the comments with an inquiry during voir dire that would have presented the jury with the circumstances surrounding Petitioner's living arrangements (Ground Three);

(4) his trial attorney provided ineffective assistance of counsel by failing to impeach Keen with her prior inconsistent statement about the circumstances surrounding A.R.'s disclosure to Keen of Petitioner's sexual abuse (Ground Four);

(5) his trial attorney provided ineffective assistance of counsel by failing to object to inadmissible hearsay testimony about J.L.W. (Ground Five);

(6) the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights to due process and a fair and impartial jury by not declaring a mistrial or taking any action when a juror's outburst contradicted Jones's testimony (Ground Six);

(7) his trial attorney provided ineffective assistance of counsel by failing to request a mistrial or respond in any way when a juror's outburst contradicted Jones's testimony (Ground Seven);

(8) the State violated Petitioner's Fifth, Sixth, and Fourteenth Amendment rights, specifically, Petitioner's right to present a defense, by failing to disclose to Petitioner prior to trial Ameren UE utilities records that were used by the State at trial to establish the time frame of the alleged acts (Ground Eight); and

(9) the trial court violated Petitioner's rights to a unanimous verdict, due process, and a fair trial as guaranteed by the Fourth, Fifth, Sixth, and Fourteenth Amendments, by submitting Instruction Number Seven (regarding the charge of first-degree statutory sodomy of A.R.) to the jury, accepting the guilty verdict, and sentencing Petitioner because the jury instruction failed to specifically describe the allegations of multiple and separate criminal acts introduced into evidence and failed to properly instruct the jury that it must agree on a specific allegation of at least one criminal act in evidence beyond a reasonable doubt (Ground Nine).

[ECF No. 1].  Petitioner contends in his petition and reply that he did not present Grounds Two, Three, and Five through Nine to the state courts prior to filing this habeas proceeding and asserts, pursuant to Martinez, 566 U.S. 1, that the ineffective assistance of his post-conviction counsel

provides cause to allow this Court to consider the merits of those grounds for relief.  [ECF No. 1].

Respondent counters that the Court should not grant Petitioner habeas relief for the following reasons:

(1) Ground One is not cognizable and, alternatively, is meritless;

(2) Ground Two is defaulted because Petitioner did not include the claim in his post-conviction appeal and, alternatively, Ground Two is meritless;

(3) Ground Three regarding counsel's challenged opening statement is without merit and, regarding counsel's failure to discuss Petitioner's living arrangements during voir dire, is defaulted because he did not present it in either his post-conviction motion or his post-conviction appeal and, alternatively, this basis for Ground Three is meritless;

(4) Ground Four is without merit;

(5) Ground Five lacks merit;

(6) Ground Six is defaulted because Petitioner did not object to the trial court's response to the juror's outburst during trial, and did not include the claim in his motion for new trial or on direct appeal, and, alternatively, Ground Six lacks merit;

(7) Ground Seven is defaulted because he did not pursue this ineffective-assistance-of-trial-counsel claim in his post-conviction motion and, alternatively, Ground Seven lacks merit;

(8) Ground Eight is defaulted because he did not object to the introduction of the Ameren UE records during trial and his post-conviction motion attorney's ineffective-assistance-of-counsel cannot establish cause for the State's alleged failure to disclose evidence and, alternatively, Ground Eight lacks merit; and

(9)  Ground Nine is defaulted because Petitioner did not object to Instruction Seven during trial and did not present a challenge to it in his motion for new trial and a post-conviction motion attorney's ineffective-assistance-of-counsel cannot establish cause for an alleged jury instruction error and, alternatively, Ground Nine is meritless.

[ECF No. 14].  As Respondent points out in his response to Petitioner's motion for stay [ECF No. 35], Petitioner asserts in his reply supporting his habeas petition three ineffective-assistance-of-trial-counsel claims that Petitioner did not articulate as grounds for relief in his petition. [ECF No. 22].

**B.  Grounds Petitioner first presented in his reply**

Respondent urges the reply brief Petitioner filed with respect to his habeas petition improperly sets forth additional ineffective-assistance-of-trial-counsel claims with respect to Grounds Two, Eight, and Nine.[8] Respondent argues the Court should not consider these three additional ineffective-assistance-of-trial-counsel claims because Petitioner may not raise new claims for the first time in his reply.  [ECF No. 35]. In support of his argument, Respondent cites Tyler v. Mitchell, 416 F.3d 500, 504 (6th Cir. 2005);[9] United States v. Barrett, 178 F.3d 34, 46 n.6 (1st Cir. 1999);[10] Jackson v. Duckworth, 112 F.3d 878, 880 (7th Cir. 1997);[11] and Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994).[12]  See also Ramsey v. United States Parole Comm'n, 840 F.3d 853, 863 n.6 (D.C. Cir. 2016);[13] Parker v. Scott, 394 F.3d 1302, 1327 (10th Cir. 2005).[14] Petitioner did not file a reply regarding his motion for stay and has not otherwise countered Respondent's contention the Court may not consider the grounds for habeas relief Petitioner first presented in his reply supporting his habeas petition.

---

[8] In his discussion of Ground Two in his reply, Petitioner presented an allegation that his trial counsel was ineffective for failing to investigate prior allegations and inconsistent statements made by A.R. This failure-to-investigate argument was not presented in the habeas petition. In the habeas petition, Grounds Eight and Nine alleged, respectively, State misconduct for failing to disclose the Ameren UE records and trial court error based on the submission of an alleged improper jury instruction. In his reply, Petitioner raised new claims asserting trial counsel provided ineffective assistance by failing to raise the alleged misconduct and the instructional error in the trial court.

[9] In Tyler, the Sixth Circuit found the district court did not err in declining to address a petitioner's ground for relief "[b]ecause the penalty-phase insufficiency argument was first presented in [the petitioner's] traverse [or reply] rather than in his habeas petition, [therefore,] it was not properly before the district court." Tyler, 416 F.3d at 504.

[10] In Barrett, the First Circuit found no "rationale for disturbing" its earlier decision rejecting the argument of a prisoner seeking post-conviction relief under 28 U.S.C. §2255 that he "properly presented [a] Jencks Act claim" by presenting it in his traverse or reply brief supporting his original Section 2255, motion even though he did not present it in his original Section 2255 motion. Barrett, 178 F.3d at 46-47 and 46 n.6.

[11] In Jackson, the Seventh Circuit concluded a traverse is not a proper pleading to raise additional grounds for relief in a Section 2254 habeas proceeding. Jackson, 112 F.3d at 880.

[12] In Cacoperdo, the Ninth Circuit concluded that a traverse was not the proper pleading for a federal habeas petitioner to raise additional grounds for relief. Cacoperdo, 37 F.3d at 507.

[13] In Ramsey, the D.C. Circuit agreed "with several other courts[' conclusions] that, ordinarily, a habeas petitioner does not preserve a claim by raising it for the first time in a reply." Ramsey, 840 F.3d at 863 n.6.

[14] In Parker, the Tenth Circuit concluded the federal habeas petitioner had waived several ineffective-assistance-of-trial-counsel-claims by not "assert[ing] them in his district court habeas petition." Parker, 394 F.3d at 1327.

Although the Court has not been directed to an Eighth Circuit decision explicitly discussing and resolving whether a ground for relief first stated in a reply supporting a habeas petition, rather than in the habeas petition itself, is properly presented in a Section 2254 proceeding, the Eighth Circuit has concluded that a district court can dismiss claims raised for the first time in a 28 U.S.C. § 2255 reply brief. Smith v. United States, 256 Fed. Appx. 850, 852 (8th Cir. 2007), citing Hohn v. United States, 193 F.3d 921, 923-24 n. 2 (8th Cir. 1999) (declining to address claims raised for the first time in a Section 2255 reply brief); Fish v. United States, 748 Fed. Appx. 91, 92, n. 2 (8th Cir. 2019) (finding a Section 2255 petitioner could not raise new issues in his reply brief).

These Eighth Circuit cases are consistent with the holdings of several other federal circuit courts regarding briefing in Section 2254 and 2255 petitions. See supra notes 10-15. Furthermore, application of this principle to Section 2254 pleadings is consistent with the Rules Governing Section 2254 Cases in the United States District Courts. Rule 2(c) specifically requires the habeas petition to "(1) specify all grounds for relief available to the petitioner; (2) state the facts supporting each ground; (3) state the relief requested…[.]" See 28 U.S.C. 2254, Rule 2(c)(1)-(3). The Rules governing the Government's answer to the petition and the petitioner's reply also clearly contemplate that these pleadings are intended to address the claims already presented in the petition and not to raise new issues. See 28 U.S.C. Section 2254, Rule 5(b) ("The answer must address the allegations in the petition[,]" including whether any claim is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of limitations.); 28 U.S.C. Section 2254, Rule 5(e) (the petitioner "may file a reply to the respondent's answer or other pleading."). Based on the foregoing, the Court finds that a reply is not a proper pleading to raise additional grounds for relief in a Section 2254 habeas proceeding

and the Court will not address those claims that Petitioner raised for the first time in his reply brief.

### IV.   Discussion

#### A. Procedurally-defaulted claims (Grounds Two, Three in part, and Six through Nine)

Respondent contends the Court is procedurally barred from considering the merits of Grounds Two, part of Three, and Six through Nine because Petitioner did not properly present these grounds to the state courts and has not demonstrated either cause or prejudice to excuse the default. Specifically, Respondent asserts that Petitioner's ineffective assistance of counsel claims as presented in Grounds Two, Seven, and part of Three are defaulted for failing to include the claims either in his post-conviction motion or on appeal. Respondent also asserts that Petitioner's claims of State and trial court error as presented in Grounds Six, Eight, and Nine are defaulted for failing to raise the alleged errors in the trial court or on appeal. Petitioner counters that his claims of ineffective assistance of trial counsel, as set forth in Grounds Two, Three, and Seven may be considered under the exception articulated in Martinez, 566 U.S. 1, in that his post-conviction counsel was ineffective for failing to bring the claims of ineffective assistance of trial counsel in the post-conviction motion or on appeal and that the underlying claims of ineffective assistance of counsel were substantial claims.

As already noted, before seeking federal habeas relief under § 2254, a petitioner must exhaust his state-court remedies. 28 U.S.C. § 2254 (b)(1)(A). To avoid procedural default, the petitioner must "fairly present" the claim to the state court before seeking federal habeas relief. Morris v. Norris, 83 F.3d 268, 270 (8th Cir. 1996); Deck v. Jennings, 978 F.3d 578, 581 (8th Cir. 2020). "A claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal

habeas petition." <u>Wemark v. Iowa</u>, 322 F.3d 1018, 1021 (8th Cir. 2003) (quoting <u>Joubert v. Hopkins</u>, 75 F.3d 1232, 1240 (8th Cir. 1996) (internal citations omitted)). "If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted." <u>Barrett v. Acevedo</u>, 169 F.3d 1155, 1161 (8th Cir. 1999) (en banc).

A petitioner must present the claim to the state courts "in accordance with state procedural rules." <u>Arnold v. Dormire</u>, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (internal quotation marks omitted) (quoting <u>Beaulieu v. Minnesota</u>, 583 F.3d 570, 573 (8th Cir. 2009)). A state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>Grass v. Reitz</u>, 643 F.3d 579, 584 (8th Cir. 2011) (quoting <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999)). This Court may not consider the merits of a procedurally defaulted claim unless the petitioner shows either (1) cause and prejudice or (2) that a miscarriage of justice will occur if the Court fails to consider the grounds because the petitioner is actually innocent of the charge of which he was convicted. <u>Sawyer v. Whitley</u>, 505 U.S. 333, 338-39 (1992); <u>Thomas v. Payne</u>, 960 F.3d 465, 471 (8th Cir. 2020).

Under Missouri law, a post-conviction proceeding is the exclusive procedure for pursuing an ineffective-assistance-of-counsel claim. <u>Moore-El v. Luebbers</u>, 446 F.3d 890, 896 (8th Cir. 2006); Mo. S. Ct. Rule 29.15(a). Any claim that should have been but was not presented in a post-conviction motion or in an appeal from a denial of a post-conviction motion is procedurally defaulted. <u>Interiano v. Dormire</u>, 471 F.3d 854, 856 (8th Cir. 2006). The Supreme Court has recognized a narrow exception to this procedural default rule. <u>Davila v. Davis</u>, --- U.S. ---, 137 S. Ct. 2058, 2062 (2017) (citing <u>Martinez</u>, 566 U.S. 1). Under <u>Martinez</u>, ineffective assistance of post-conviction counsel may constitute cause for a petitioner's failure to properly raise a claim of

ineffective assistance of trial counsel in state court when the state's collateral review proceeding was the initial review proceeding for an ineffective assistance of counsel claim. Martinez, 566 U.S. at 14.

Under this exception, the petitioner can overcome the procedural default of a claim if "(1) post-conviction counsel performed deficiently; (2) 'there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different'; and (3) the 'underlying ineffective-assistance-of-trial-counsel claim is a substantial one.'" Dickinson v. Shinn, 2 F.4th 851, 858 (9th Cir. 2021) (quoting Ramirez v. Ryan, 937 F.3d 1230, 1242 (9th Cir. 2019) (internal citations omitted), cert. granted sub nom. Shinn v. Ramirez, No. 20-1009, —— U.S. ——, 141 S. Ct. 2620, 2021 WL 1951793 (U.S. May 17, 2021). To meet this narrow exception for establishing "cause," the petitioner must demonstrate that post-conviction counsel was ineffective under the standards of Strickland v. Washington, 466 U.S. 668 (1984). Martinez, 566 U.S. at 14. To prevail on a claim of ineffective assistance of counsel, a defendant must show that: (1) "counsel's representation fell below an objective standard of reasonableness[;]" and (2) "the deficient performance prejudiced the defense[.]" Strickland, 466 U.S. at 687-88. In assessing post-conviction counsel's performance, the Court must determine whether the underlying ineffective assistance of trial counsel claim was "substantial" enough that post-conviction's counsel's failure to raise the issue constituted ineffectiveness. Martinez, 566 U.S. at 14; Deck, 978 F.3d at 582.  A claim is "substantial" when it has "some merit." Martinez, 566 U.S. at 14.

To meet the "prejudice" prong, the petitioner must "demonstrate that he suffered actual prejudice from the alleged error." Davila, ---  U.S. ---, 137 S. Ct. at 2062, 2065.  "The habeas petitioner must show 'not merely that the errors at ... trial created a *possibility* of prejudice, but

that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions'" such that he was denied fundamental fairness at trial. Murray v. Carrier, 477 U.S. 478, 494 (1986) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

### 1. Grounds Two, Three in part, and Seven – Ineffective Assistance of Counsel

In Grounds Two, Three in part, and Seven, Petitioner raises claims of ineffective assistance of trial counsel each of which he failed to properly present during his state post-conviction proceeding. Petitioner contends that his post-conviction counsel's failure to raise these claims establishes cause for the default under Martinez.[15]

In Ground Two Petitioner asserts his trial counsel was ineffective for failing to lay a proper foundation for the admission of the text message records and for failing to properly impeach A.R. with her prior inconsistent statements made in the text messages. Petitioner presented this claim in his amended post-conviction petition, and the motion court denied relief on this claim. Petitioner did not raise the claim in his appeal from the motion court's denial. The failure to brief a claim on post-conviction appeal constitutes default that precludes federal court review of the claim. Sweet v. Delo, 125 F.3d 1144, 1150 (8th Cir. 1997).

In his reply, Petitioner argues that it was unreasonable for post-conviction counsel to "fail to reiterate the claim in the post-conviction appeal" because "[a] reasonable and effective attorney would have been aware that the failure to address and prosecute this claim on appeal would result in a possible default for federal habeas review." Contrary to Petitioner's assertion, his claim is not one of ineffective assistance of post-conviction counsel but instead is a claim of ineffective assistance of *post-conviction appellate* counsel. Martinez provides that ineffective

---

[15] Petitioner raised the Martinez exception as to Grounds Five through Nine in his petition and as to Grounds Two and Three in his reply. While this Court is not obligated to consider arguments raised for the first time in the reply, we will briefly address Petitioner's Martinez claims as to Grounds Two and Three.

assistance of post-conviction counsel may constitute cause for a petitioner's failure to properly raise a claim of ineffective assistance of trial counsel. Martinez, 566 U.S. at 14. Outside of this narrow exception, the general rule governing procedural default applies. Davila, --- U.S. ---, 137 S. Ct. at 2065-66. Petitioner has not presented this Court with any precedent extending Martinez to a claim of ineffective assistance of post-conviction appellate counsel. As such, Petitioner has failed to demonstrate good cause for his default of this claim, and the Court finds the claim is procedurally barred.

In Ground Three, Petitioner contends his trial counsel provided ineffective assistance by unreasonably making derogatory comments about Petitioner to the jury in the opening statement, and by failing to couple the comments with an inquiry during voir dire that would have presented the jury with the circumstances surrounding Petitioner's living arrangements. While the first portion of this argument, that counsel unreasonably made derogatory comments about Petitioner to the jury in opening statement, was presented in his amended Rule 29.15 post-conviction motion and on appeal, the second half of Petitioner's claim was never raised during the post-conviction litigation.[16] Petitioner now maintains that post-conviction counsel's failure to raise the second portion of his claim establishes cause for the default under Martinez. In support, Petitioner states that his claim of ineffective assistance of trial counsel was "substantial" and that "reasonable and effective post-conviction counsel" would have presented the claim in the amended petition under the circumstances. Aside from these general assertions, Petitioner provides no argument in support of his position that post-conviction counsel's omission satisfies the Strickland standard.

---

[16] The Court will address the merits of the first part of Petitioner's Ground Three later in this Memorandum and Order.

When assessing counsel's conduct, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. 668, 689 (1984). The presumption of effective assistance of counsel can generally only be overcome when the ignored issues are clearly stronger than those presented. See Deck, 978 F.3d at 584 (post-conviction counsel's decision not to raise a claim is not deficient performance unless that claim was plainly stronger than those presented). Here, post-conviction counsel raised seven claims of ineffective assistance of trial counsel in the amended post-conviction petition. Petitioner has presented this Court with no clear and cogent argument supporting a finding Petitioner's defaulted claim in Ground Three was clearly stronger than the claims presented. Therefore, Petitioner has failed to overcome the presumption that post-conviction counsel's representation fell within the wide range of appropriate professional assistance.  Because Petitioner has not demonstrated ineffective assistance of post-conviction counsel for failing to raise this claim, Petitioner has not demonstrated good cause for his default of the claim.  Petitioner's Ground Three is, in part, procedurally barred.

In Ground Seven, Petitioner argues his trial attorney provided ineffective assistance of counsel by failing to request a mistrial or to respond "in any way" to a juror's "outburst" during the trial. The "outburst" occurred when a juror responded to one of Jones's answers at trial. During the State's cross-examination of Jones, the State asked Jones: "while you were being paid [to babysit J.L.W.'s children], you were in [J.L.W.]'s bedroom sleeping with her boyfriend, correct?"  Jones answered, "No," and a juror said: "Yes, she was." Neither the trial court nor the attorneys addressed or responded to the juror's comment. Petitioner asserts his trial attorney provided ineffective assistance of counsel by failing to request a mistrial or to otherwise respond to the juror's comment because a reasonable attorney under the circumstances would have

attempted to remedy the situation in some form. Petitioner did not raise this claim in his amended post-conviction motion or on appeal from the motion court's denial of relief and the claim is subject to procedural bar.

Petitioner asserts that his post-conviction counsel was ineffective for failing to raise the issue in the post-conviction motion because "[r]easonable and effective post-conviction counsel would have included this patently obvious claim in the 29.15 motion." Petitioner alleges he was "prejudiced for not having his claim heard" and that he was denied his constitutional right to an impartial jury and fair trial "because the outburst was made in the presence of all the jurors, in the middle of trial[.]" Petitioner asserts that trial counsel "needed to address the outburst to determine the extent of the juror's beliefs and what effect the outburst or other possible statements may have been made by the juror that would have tainted the other members of the jury."

Petitioner's allegations regarding both cause and prejudice are conclusory and undeveloped. The record demonstrates that prior to the juror's "outburst," Jones testified that she did, in fact, engage in sexual relations with Petitioner in J.L.W.'s bedroom while she was babysitting J.L.W.'s children. Petitioner has made no attempt to address trial and post-conviction counsels' performance in light of Jones's complete testimony. Furthermore, to meet the "prejudice" prong, the petitioner must "demonstrate that he suffered actual prejudice from the alleged error." Davila, --- U.S. ---, 137 S. Ct. at 2062, 2065. Here, Petitioner's claims regarding prejudice are insufficient to demonstrate that he suffered actual prejudice, as opposed to the possibility of prejudice, from the alleged error. Because Petitioner has failed to demonstrate cause and prejudice to excuse his procedural default, Petitioner's Ground Seven is deemed procedurally defaulted.

**2.   Grounds Six, Eight, and Nine – Trial court error and State discovery violation**

In Ground Six, Petitioner argues the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights to due process and to a fair and impartial jury by failing to declare a mistrial or taking some action when a juror's outburst contradicted Jones's testimony. In Ground Nine, Petitioner contends the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights to a unanimous verdict by submitting Instruction Number Seven to the jury, accepting the guilty verdict, and sentencing Petitioner because the jury instructions failed to specifically describe the allegations of multiple and separate criminal acts introduced into evidence and failed to properly instruct the jury that it must agree on a specific allegation of at least one criminal act in evidence beyond a reasonable doubt.  In Ground Eight, Petitioner argues the State violated his Fifth, Sixth, and Fourteenth Amendment "right to present a defense," by failing to disclose to Petitioner evidence of the Ameren UE utilities records that were used by the State at trial to establish the time frame of the alleged acts.

Petitioner did not object to any of these alleged errors or omissions during trial, did not raise the claims in a motion for new trial, and did not raise the claims on appeal. Petitioner's failure to present his claims in the state court results in their procedural default. See Barrett, 169 F.3d at 1161. Petitioner must demonstrate cause and prejudice to overcome procedural default. Sawyer, 505 U.S. at 338-39; Thomas, 960 F.3d at 471.

In his habeas petition, Petitioner argues the default of these claims are excused under Martinez. Again, Martinez, applies only to claims of ineffective assistance of trial counsel which were defaulted due to the ineffective assistance of post-conviction counsel. Davila, 137 S. Ct. at 2065. Outside of this exception, the general rule governing procedural default applies. Id. at 2065-66. Petitioner's Grounds Six, Eight, and Nine are not claims of ineffective assistance of

trial counsel and categorically do not fall under Martinez. Petitioner has not presented any alternative basis to support a finding of cause and prejudice to excuse his procedural default of these claims. As such, Petitioner's Grounds Six, Eight, and Nine are procedurally defaulted.

**B.  Claims addressed on the merits (Grounds One, Three in part, Four, and Five)**

**1.  Standard for habeas review**

A prisoner in custody under the judgment and sentence of a state court may only seek habeas relief on the ground that his custody violates the United States Constitution, laws, or treaties. 28 U.S.C. §2254(a); see also 28 U.S.C. §§ 2241(c)(3), 2241(d). When considering a state prisoner's habeas petition, a federal court is bound by the AEDPA, see 28 U.S.C. § 2254(d), to exercise "only a limited and deferential review of underlying state court decision." Nash v. Russell, 807 F.3d 892, 897 (8th Cir. 2015) (internal quotation marks omitted) (quoting Worthington v. Roper, 631 F.3d 487, 495 (8th Cir. 2011)). A federal court may not grant habeas relief to a state prisoner unless a state court's adjudication on the merits of a claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

A state court decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court decision constitutes an unreasonable application of clearly established federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to

the facts of the prisoner's case." Id. at 413. The test of reasonableness is an objective one. Id. at 409-10. When reviewing a matter under Section 2254(d)(1), a federal habeas court "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

Under section 2254(d)(2), a petitioner may obtain relief if the state court's rejection of his claim was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A federal habeas court must "accord the state trial court substantial deference" and will not supersede the state court's factual determination if "reasonable minds reviewing the record might disagree about the finding in question." Brumfield v. Cain, 576 U.S. 305, 314 (2015) (internal quotation marks omitted) (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)). A state court's factual determination is not unreasonable "merely because [a] federal habeas court would have reached a different conclusion in the first instance." Wood, 558 U.S. at 301.

A state court's factual determination is presumed correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. §2254(e)(1). The presumption of correctness applies to the state court's factual determinations at either the trial or appellate levels, Smulls v. Roper, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), and to a state court's implicit findings of fact, Grass v. Reitz, 749 F.3d 738, 743 (8th Cir. 2014). Federal habeas courts defer to a state court's credibility determinations and grant habeas relief only if those determinations were objectively unreasonable based on the record. Smulls, 535 F.3d at 864.

### 2.  Ground One: Trial court error - Admission of text messages

In his Ground One, Petitioner argues the trial court violated his rights to due process and to a fair and impartial trial under the Fifth and Fourteenth Amendments by excluding from

evidence the text messages from Jones's cellular telephone when there was a proper foundation laid for admission of the evidence. Respondent counters that Petitioner's claim presents a purported error in the admission of evidence, which challenges application of a state evidentiary rule rather than constitutes a violation of the Constitution, laws, or treaties of the United States, and, therefore, is not a cognizable basis for habeas relief under Section 2254.

Whether the trial court erred in the application of state laws regarding the admission of evidence is not a cognizable claim in a federal court's habeas review of a state conviction. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). During habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States, not whether the state court's determination violated a state law. Id. at 68. While Petitioner couches his claim in terms of a federal constitutional violation, the substance of his claim is no more than a challenge to the state court's determination on a state evidentiary rule. Petitioner provides no authority and no analysis suggesting that the state court's determination on this question of state law rose to the level of a federal constitutional violation. Based on the foregoing, Petitioner's Ground One is denied.

### 3.   Grounds Three (in part), Four, and Five – Ineffective Assistance of Counsel

Petitioner asserts in Grounds Three (in part), Four, and Five that he received ineffective assistance of trial counsel. Respondent argues the Missouri Court of Appeals addressed these claims on the merits and that this court should defer to the state court's decision and deny these grounds for relief.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness[;]" and (2) "the deficient performance prejudiced the defense[.]" Strickland, 466 U.S. at 687-88. The first

prong requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. Defense counsel's conduct is presumed to fall within the wide range of professionally reasonable assistance. Id. at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91.

To prove prejudice, a petitioner must show a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. A court need not address both prongs of the Strickland test if it finds the petitioner has not established one of the prongs. Id. at 697.

"Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Harrington v. Richter, 562 U.S. 86, 105 (2011). "The standard created by Strickland and §2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (internal citations omitted). It is not sufficient for a petitioner to "show that he would have satisfied Strickland's test if his claims were being analyzed in the first instance[.]" Bell v. Cone, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Id. at 699.

### a. Ground Three – Derogatory comments during opening argument

In the remaining portion of his third ground for relief, Petitioner argues that his trial attorney provided ineffective assistance of counsel by "unreasonably making derogatory

comments" about Petitioner to the jury in opening statement. These included statements by defense counsel that "Just listening to the prosecutor and the things she said made me hate my client[,]" and "Let me just put this frankly.  [Petitioner] had probably one of the most unorthodox living arrangements that I have ever heard." Petitioner contends these comments displayed contempt for Petitioner, attacked Petitioner's character, and were an attempt by counsel to distance himself from Petitioner. Petitioner asserts that counsel's comments "encouraged jurors to adopt as true the prosecution's portrayal of [Petitioner] as a depraved individual, completely lacking in moral judgment and worthy of disdain and condemnation" and that counsel's half-hearted closing argument did not ameliorate the stain from the jury's collective conscience. Petitioner asserts that counsel's representation fell below reasonable professional norms, was not justified by reasonable trial strategy, and prejudiced Petitioner by "rendering the jury impartial."[17]

At the evidentiary hearing on the post-conviction motion, Petitioner's trial attorney testified his comments during opening statement were not made out of personal disdain for Petitioner but were a part of counsel's trial strategy. Counsel testified he wanted to direct the jury's attention away from Petitioner's unorthodox living arrangement and onto the evidence related to the criminal charges. The motion court subsequently denied Petitioner's post-conviction claim for relief, concluding the comments were the product of reasonable trial strategy. [ECF No. 17-9].

On appeal, the Missouri Court of Appeals applied the <u>Strickland</u> standard to Petitioner's claim. [ECF No. 35-13]. In assessing the claim, the Court reviewed counsel's entire opening statement and considered the opening statement within the context of the overall defense. The

---

[17] Although Petitioner states that counsel's conduct rendered the jury "impartial[,]" the Court presumes Petitioner intends to assert that counsel's conduct negatively affected the jury's ability to be impartial.

Court of Appeals concluded that counsel's conduct was reasonable, in that counsel's "opening statement employed a rhetorical technique to preemptively counter the State's characterization and evidence of [Petitioner] as a sex-fiend, as predicted by Trial Counsel." [ECF No. 35-13].

The Court concludes that the Missouri Court of Appeals properly applied Strickland and determined that Petitioner failed to satisfy his burden of demonstrating that counsel's performance fell outside the range of reasonable professional assistance. The Missouri Court of Appeals' conclusion that trial counsel was not ineffective was neither contrary to, nor an unreasonable application of, Strickland, and was not based upon an unreasonable determination of the facts based on the record. Accordingly, Petitioner's Ground Three is denied.

### b.  Ground Four – Failing to impeach Keen with prior inconsistent statement

In his fourth ground for relief, Petitioner argues that his trial attorney provided ineffective assistance of counsel by failing to impeach Keen with her prior inconsistent statement about the circumstances surrounding A.R.'s disclosure to Keen of Petitioner's sexual abuse. Petitioner asserts that the circumstances surrounding the disclosure were material to the credibility and reliability of Keen's testimony and A.R.'s out-of-court statements.

At trial, Keen testified that, during a visit to the Folsom Avenue residence, Keen pulled A.R. aside and told her not to worry about some negative comments Petitioner had made about A.R. [ECF No. 17-1, 17-2]. Keen testified that A.R. responded that she knew why Petitioner made the comments. Keen asked A.R., "why" and A.R. said, "He wanted her to perform some sexual acts and she didn't want to. She didn't do it that day, so he was mad." Keen stated that A.R. specified that Petitioner wanted her to "suck his stuff" and they had done that while in a car.

At the post-conviction evidentiary hearing, trial counsel testified that he obtained the police reports in this case.  [ECF No. 38-1]. Counsel testified the police reports state that Keen told officers that on one occasion when she was at the Folsom Avenue residence, A.R. told Keen that "she was going to tell on" Petitioner. [Id.] Keen reported that she asked A.R. "what was going on" and A.R. told her that Petitioner "touched her vagina and made her perform oral sex on him." [Id.] Keen stated that Petitioner had called A.R. "pissy and dirty" and that Keen believed Petitioner said this "because he did not want [A.R.] to tell on him." [Id.] At the evidentiary hearing, trial counsel acknowledged that he did not impeach Keen at trial with these inconsistencies, but he could not recall why he did not do so. [Id.]

The motion court denied Petitioner's request for post-conviction relief on this claim, finding the inconsistencies between Keen's initial statement to police and her trial testimony were minor and that the failure to raise the inconsistencies was not prejudicial. [ECF No. 17-9] On appeal, the Missouri Court of Appeals applied the Strickland standard to Petitioner's claim of error. [ECF No. 35-13]. In rejecting Petitioner's claim, the Court of Appeals agreed that there were inconsistencies between Keen's statement to the police and her testimony at trial but concluded that the inconsistencies were "very minor," and that trial counsel did not provide ineffective assistance by failing to impeach Keen with these minor inconsistencies. [ECF No. 35-13].

Upon review of the record, the Court concludes that the Missouri Court of Appeals properly applied Strickland and its determination that trial counsel did not provide ineffective assistance by failing to impeach Keen with her prior inconsistent statement was neither contrary to nor an unreasonable application of clearly established federal law. See Peterson v. Smith, 510 Fed. Appx. 356, 362 (6th Cir. 2013) (failure of counsel to attempt to impeach witness with minor

inconsistencies, immaterial discrepancies, or details omitted from prior statement did not fall outside the wide range of reasonable professional assistance). Nor was the Court of Appeals' decision based on an unreasonable determination of the facts in the light of the record. Accordingly, Petitioner's Ground Four is denied.

### c.   Ground Five – Hearsay testimony regarding J.L.W.

In his Fifth Ground, Petitioner contends his trial counsel was ineffective for failing to object to hearsay testimony regarding "nonverbal assertions and verbal statements" of J.L.W., the victims' mother and his co-defendant. J.L.W. was charged in the same information as Petitioner with two counts of first-degree endangering the welfare of a child and one count of victim tampering. [ECF No. 17-5] J.L.W. successfully moved for severance from Petitioner's case. [ECF No. 17-1] Prior to trial, the State filed a motion in limine seeking to prevent Petitioner from "asking any question or making any comment regarding" J.L.W.'s statements as inadmissible hearsay because J.L.W. was going to exercise her Fifth Amendment right against self-incrimination. [ECF No. 17-5]. The trial court ruled that, if Petitioner wanted to call J.L.W. as a witness, the court would conduct a hearing to ascertain whether she would exercise her Fifth Amendment privilege against self-incrimination.  [ECF No. 17-1] The trial court announced that, if during that hearing J.L.W. stated she would exercise her Fifth Amendment right, the trial court would sustain this aspect of the State's motion in limine to prevent Petitioner from calling her to the stand.  [ECF No. 17-1]

Petitioner argues that, in spite of the trial court's ruling, the State repeatedly elicited inadmissible hearsay testimony regarding nonverbal assertions and verbal statements of J.L.W. and that his trial counsel was ineffective for failing to object to the testimony. Petitioner

identifies the following instances as the admission of inadmissible hearsay to which counsel did not object:

(1) during opening statement, the prosecutor stated that the Children's Division talked to J.L.W. and that she was angry;

(2) the prosecutor asked Keen how J.L.W. reacted to the news of A.R.'s disclosure of the alleged sexual abuse;

(3) Fantroy testified that J.L.W was not being supportive of her child and that she wanted to know how quickly "this would be over[;]"

(4) "numerous statements" by Fantroy suggesting that J.L.W. was not sure where the victims were after the February 2, 2009 hotline call and that J.L.W was lying about not knowing that the victims were in the home with Petitioner; and

(5) testimony from Sergeant Taylor that J.L.W. was "very confrontational" during her interview with him.

Petitioner maintains that this testimony was elicited by the State to demonstrate that Petitioner "was a person of bad character who improperly influenced [J.L.W.] to disregard her children" and that J.L.W.'s reaction, or lack thereof, to the disclosure of abuse was proof that the allegations were true because her disbelief was unreasonable under the circumstances. Petitioner contends his Sixth Amendment right to confrontation was violated, in that he was not afforded the opportunity to cross-examine J.L.W. because she had invoked her rights under the Fifth Amendment.

At the post-conviction hearing, trial counsel testified he did not know why he did not object to the admission of this evidence. [ECF No. 38-1]. The motion court concluded that any hearsay objections to the admission of the evidence would have been denied because: (1) the

testimony constituted the observations of the testifying witnesses and (2) the statements were not offered for their truth but were offered to explain the conduct of the victims and the investigation into the allegations of abuse. [ECF No. 17-9]. The motion court found Petitioner's trial counsel did not provide ineffective assistance because any hearsay objection to the evidence would have been without merit. [ECF No. 17-9].

Petitioner raised the issue in his appeal from the motion court's denial of relief. In addressing Petitioner's claim, the Missouri Court of Appeals first assessed whether the challenged statements constituted inadmissible hearsay.  [ECF No. 35-13]. In Missouri, hearsay is generally defined as "any out-of-court statement this is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value." State v. Sutherland, 939 S.W.2d 373, 376 (Mo banc 1997).  Testimony regarding what another person said that is offered in explanation of conduct instead of as proof of the facts in the other person's statement is not inadmissible hearsay. State v. Walker, 448 S.W.3d 861, 871 (Mo. App. E.D. 2014). Consequently, "a statement offered to explain subsequent conduct by the police and to supply background and continuity is not considered hearsay and is admissible." State v. Robinson, 111 S.W.3d 510, 513 (Mo. App. S.D. 2003); State v. Brooks, 618 S.W.2d 22, 25 (Mo. banc 1981). The Missouri Court of Appeals concluded that the challenged statements were not offered for the truth of the matter asserted but as background or explanation of certain conduct. As such, the Court of Appeals found that any hearsay objection to this evidence would have been denied, and that trial counsel could not be deemed to have been ineffective for failing to assert non-meritorious objections. [ECF No. 35-13].

Again, this Court may not grant relief for claims adjudicated on the merits by the state courts unless the adjudication was contrary to, or involved an unreasonable application of,

federal law as determined by the Supreme Court, or was an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). Here, Petitioner does not provide any support for his claim that the challenged evidence constituted inadmissible hearsay, that any objection by trial counsel would have been sustained, or that trial counsel's failure to make a non-meritorious objection constitutes ineffective assistance.  See Storey v. Roper, 603 F.3d 507, 525 (8th Cir. 2010) (petitioner cannot sustain a claim of ineffective assistance of counsel based on the failure to raise a non-meritorious objection.)

Upon review of the record, the Court concludes that the Missouri Court of Appeals' determination that trial counsel did not provide ineffective assistance by failing to object to the challenged statements was not contrary to or an unreasonable application of clearly established federal law. Nor was the Court of Appeals' decision based on an unreasonable determination of the facts in the light of the record. The Court denies Petitioner's Ground Five.

## V.    Certificate of appealability

A final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court cannot be appealed unless the judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1).  A judge may issue a COA under Section 2253(c) only if a petitioner has made "a substantial showing of the denial of a constitutional right."  Tennard v. Dretke, 542 U.S. 274, 282 (2004); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  This standard requires a petitioner to demonstrate, with respect to claims resolved on the merits, that "reasonable jurists would find the ... court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000); accord Miller-El, 537 U.S. at 338 (quoting Slack, 529 U.S. at 484).

The Court concludes that Petitioner has not made a substantial showing of the denial of any constitutional right. Accordingly, the Court will not issue a certificate of appealability with respect to any aspect of the denial of Petitioner's petition.

**VI.    Conclusion**

After careful consideration,

**IT IS HEREBY ORDERED** that Petitioner's motion for stay [ECF No. 29] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's motion to supplement [ECF No. 40] is DENIED.

**IT IS FURTHER ORDERED** that Petitioner's motion for appointed attorney [ECF No. 41] is DENIED.

**IT IS FURTHER ORDERED** that Petitioner's motion to proceed in forma pauperis [ECF No. 42] is DENIED.

**IT IS FURTHER ORDERED** that Petitioner's request for relief pursuant to 28 U.S.C. § 2254 [ECF No. 1] is **DENIED**.

**IT IS FINALLY ORDERED** that any motion by Petitioner for a certificate of appealability will be **DENIED.**

A separate judgment in accordance with this Memorandum and Order is entered this same date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of December, 2021